GEORGE W. ZEIGLER *vs.* PATRICK H. KING, Trustee in insolvency of EDWARD WOOLS.

The trustee in insolvency, under the new insolvent act of 1854, ch. 193, has the *same exclusive* power to *sell* the *whole* estate of the insolvent, as under the old system, unless property conveyed in trust before the petition, in the manner allowed by the 13th section of that act, be regarded as an exception.

Where a decree for the sale of mortgaged property, under the act of 1833, ch. 181, has been passed, and after the trustee had advertised the property for sale, the mortgagor applies for the benefit of the insolvent laws, and his trustee in insolvency is appointed and gives bond, the latter, and not the trustee under the decree, is entitled to make the sale.

The fact that the trustee in insolvency filed his petition in the mortgage case, denying the right of the trustee under the decree to sell, and asking that the sale may be stopped, on the ground that he alone had the right to sell, is not a submission to the jurisdiction of the court passing the decree, to such an extent as to estop him from successfully resisting the sale.

APPEAL from the Circuit Court for Baltimore city.

This appeal was taken from an order of the court below, (KREBS, J.,) setting down for hearing, on a named day, the petition of the appellee, and directing the appellant, its trustee, under a decree for the sale of the mortgaged property, to suspend further proceedings in relation to the sale, and withdraw his advertisement of sale until the further order of the court. The facts of the case are fully stated in the opinion of this court.

The appellee moved to dismiss the appeal for the reason stated in the argument.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*Chas. H. Pitts* and *Geo. H. Williams* for the appellant, argued.

1st. As to the motion to dismiss. The order appealed from was an injunction both in form and effect, and no more interlocutory than every injunction is before being made perpetual, and an appeal therefrom is justified by the acts of 1835, ch. 346, secs. 2 and 3, and ch. 380, sec. 3. By these acts the granting of an injunction upon the case made to the court by the bill, was made a matter of appeal without waiting for the settlement of a right. 6 *Gill*, 97, *Wagner vs. Cohen.* 7 *Md. Rep.*, 402, *Guyton vs. Flack.* And it is submitted, that the cases of *Welch vs. Davis,* 7 *Gill*, 366, and *Cain vs. Warford,* 7 *Md. Rep.*, 286, have no relation to a case like the present.

2nd. If then the appellant be entitled to an appeal, it is submitted, there is *now* no law of this State which gives the sale of property exclusively to a trustee in insolvency. The cases of *Alexander vs. Ghiselin,* 5 *Gill*, 180; *Carter vs. Dennison,* 7 *Gill*, 170; *Waters vs. Dashiell,* 1 *Md. Rep.*, 471; *Manahan vs. Sammon,* 3 *Md. Rep.*, 471, and *Eschbach vs. Pitts,* 6 *Md. Rep.*, 75; were decided under the act of 1805, ch. 110, sec. 7, which act has been expressly repealed by the act of 1854, ch. 193; and the Legislature, in re-enacting a new system of insolvency, especially excluded the provision of the 7th sec. of the act of 1805, ch. 110, and did not design a continuation but a repeal of the system arising from this section, as is manifest not only from such exclusion, but from the whole tenor of the new law, and especially by its 13th section. But, even under the old system, it has never been decided, that the trustee's power sufficed to set aside a decree *in rem* of a court of equity; such decree is not only an incumbrance and a lien, but something more. The act of 1785, ch. 72, sec. 3, provides for a foreclosure, or a sale, as a mode of foreclosure, and after a decree for either, the mortgagor can, by no act of his, disturb or avoid the decree. The case of *Wilson vs. Turpin,* 5 *Gill*, 59, cited by the appellee, applies to and arose out of the bankrupt law of the United States, and that case also limits the power of the assignee in bankruptcy to cases "where the jurisdiction of the State court had not attached."

By analogy, therefore, where the jurisdiction of the circuit court for Baltimore city has first attached, a trustee has no right to interpose.

3rd. It is also submitted, that the petition here shows no case for an injunction. The proper course was, to stand off, or to except to the ratification of the sale when made. By filing the petition in this case, to proceedings which were *ex parte*, the appellee has made himself a party and submitted to the jurisdiction of the court. *Hunter vs. Hatton,* 4 *Gill,* 124.

*E. Cummiskey* and *T. P. Scott,* for the appellee, moved to dismiss the appeal, because the order appealed from was only interlocutory and not final; and was not an injunction within the meaning of the acts of 1832, ch. 197. 1835, ch. 346 and ch. 380. 7 *Gill,* 366, *Welch vs. Davis.* 7 *Md. Rep.,* 286, *Cain vs. Warford.*

But if the court should be of opinion that the appeal will lie, then the appellee will contend that the order was right and must be affirmed, because the law gives the sale of the property to the trustee in insolvency, and the trustee under the decree could not sell after the application of Wools for the benefit of the insolvent laws. See *Wilson vs. Turpin,* 5 *Gill,* 58, and *Glenn vs. Boston and Sandwich Glass Co.,* 7 *Md. Rep.,* 294, in addition to the cases referred to under the second point of the appellant.

Eccleston, J., delivered the opinion of this court.

Inasmuch as we think there was no error in the action of the court below, from which this appeal was taken, we need not decide whether the appellee's motion to dismiss should be sustained or not.

G. W. Zeigler, (the appellant,) on the 2nd of May 1856, under the act of 1833, ch. 181, obtained a decree for the sale of a house and lot in Baltimore, upon a mortgage over-due and unpaid, executed by a certain Edward C. Wools.

In conformity with the decree the property was advertised to be sold on the 28th of May 1856.

On the 10th day of the same month, and after the advertise-

ment, Wools applied for the benefit of the insolvent law, and the appellee, (P. H. King,) was appointed his trustee. Thirteen days after, the appellee filed a petition asking the circuit court to restrain its trustee under the decree from proceeding to sell; and the court passed an order setting this petition down for hearing on the 10th of June, and directing its trustee not to sell until further order of the court.

From this order the appeal was taken, the appellant having first filed his answer to the appellee's petition.

Supposing that the order of the court is based upon the doctrine that a trustee in insolvency has the exclusive right to make sale of the insolvent's property, it is insisted, by the appellant's counsel, that such is not now the law in Maryland, whatever it may have been formerly. Their argument is, that the exclusive authority of such trustee to sell, which has been recognized in *Alexander vs. Ghiselin, 5 Gill*, 180, and in other subsequent decisions of like character, was based upon the act of 1805, ch. 110, and more especially the 7th sec. of it: which act has been repealed by that of 1854, ch. 193, creating a new system of insolvency. That the latter act did not re-enact the 7th section of the former law, and by thus excluding its provisions, the Legislature manifested a design, not to continue but to repeal the system arising from that section. Which design, it is said, is not only manifest "from such exclusion, but from the whole tenor of the new law, and expressly by the 13th section thereof."

Admitting that the 7th section of 1805 has not, in terms, been re-enacted, still it does not necessarily follow that the provisions of the late act do not, under the circumstances of this case, confer upon the insolvent's trustee the exclusive right of selling the mortgaged premises.

The 2nd section of the new law provides that a trustee shall be appointed, who is to give bond with surety for the faithful performance of his trust; that a conveyance shall be made to the trustee by the insolvent, of "all his property and estate of every description." And it is evident, from the 1st, 2nd and 15th sections, that upon the approval of the bond, "all the property, of every description, rights and claims of the insol-

vent," whether mentioned in the schedule or not, will vest in the trustee, except the necessary wearing apparel and bedding of the insolvent and his family, and such property as may by law be exempted from execution.

By the 10th section, it is enacted, "That the estates of insolvents shall be distributed under the orders of the court, according to the principles of equity."

For the purpose of carrying this provision into effect, where there is specific property, a sale is essentially necessary, for it cannot be supposed the Legislature contemplated a distribution of the property, in kind, among the creditors. And directing the estate to be distributed under the orders of the court, necessarily includes authority in the court to order a sale, by the trustee, who represents the creditors, and holds the property for their use. It was, evidently, the design of the Legislature to have the estate converted into money, and the distribution then made under the orders of the court.

The 15th section shows the Legislature were so careful of the rights of the trustee, even in regard to property not mentioned in the schedule, as to prevent his authority and control over it from being interfered with to any further extent than to permit a creditor to secure a lien upon it by *fieri facias* or attachment, after the petition has been filed.

And although the section was introduced for the express purpose of allowing a creditor to obtain such a lien, the *proviso* declares, "that nothing in this section shall be construed to impair the right and title of the trustee to such property or claims, as provided by the second section, but shall only operate to give the judgment creditor, who shall discover such property or claims, a priority to be paid out of the proceeds thereof." It cannot well be doubted, that the proviso was designed to prohibit the creditor from having the property sold under his process, but to allow him the privilege of claiming a priority to be paid out of the proceeds of a sale to be made by the trustee. If not so, why say the right and title of the trustee shall not be impaired, and the creditor, notwithstanding he is permitted to levy upon the property, shall only be entitled to a *priority* when the proceeds are distributed?

The 1st, 2nd, and 15th sections are careful to vest the estate, *generally*, in the trustee, and the latter section cautiously protects his rights from being impaired, even by liens created under its sanction, except so far as to give them preference or priority in payment. In addition to which, whilst the law, in broad terms, provides, "that *the estates of insolvents shall be distributed under the orders of the court;*" property covered by liens or incumbrances are not excepted, unless property conveyed in trust, before the petition, in the manner allowed by the 13th section, can, notwithstanding such conveyance, be considered, after the petition, *as part of the insolvent's estate*, subject to a lien or incumbrance, and his trustee as having no authority to make sale of the same, for the purpose of bringing the proceeds into court for distribution. And conceding such to be the case, (without deciding whether it is so or not,) even then, upon the principle that "exceptions tend to prove the rule," such a construction of this section would have the effect of sustaining, instead, as has been suggested, of militating against the *general authority* of an insolvent's trustee to sell the whole estate, notwithstanding liens or incumbrances, with the single exception just referred to.

If the system is not so interpreted as to allow the trustee such a general right of selling, it will be difficult to perceive how the *estate* can be effectually *distributed* according to principles of equity, under the *orders of the court*." And that it should be so done is the design of the law, there cannot be a shade of doubt.

The advantage resulting from our interpretation of the new system, may be very well illustrated by quoting a part of the opinion of the court in deciding the case of *Alexander, et al., vs. Ghiselin, et al.,* 5 *Gill,* 179, under the old law, where it is said: "The leading and general design of all bankrupt and insolvent laws, is, to insure a prompt and complete settlement of all the affairs of the party, and an early distribution amongst the creditors, as nearly in equal proportions as a regard to positive and acknowledged preferences will admit. To facilitate these objects, our law has wisely given to the trustee, to be appointed by the court, the entire management of the estate,

subject, of course, to the control of the court by whom he is
appointed, charging him with the duty of paying off liens and
incumbrances to which the estate might be subject. His duty
requires him to make the earliest disposition and settlement,
regarding the interests of all the creditors, the particular lien
creditor included, and brings all the claimants before one tri-
bunal, whereas, by allowing sheriffs and mortgagees to parti-
cipate in the administration of the trust, adverse interests are
created, delays endangered, if not insured, and probably dif-
ferent, and possibly conflicting tribunals consulted."

In the case of _Hurt vs. Stull_, 4 _Md. Ch. Dec._, 391, a
bill was filed for the purpose of enforcing a vendor's lien. A
decree directing a sale and appointing a trustee to sell was pass-
ed, which, upon appeal, was affirmed. Subsequently to the
decree, but before a sale, the vendee applied for the benefit of
the insolvent laws, under the old system, and his trustee in
insolvency was duly appointed, who, upon the ground that
the exclusive right of selling the property was vested in him,
applied to the chancellor to stay the execution of the decree.
The late learned chancellor, however, dismissed the petition,
entertaining the opinion, that the trustee, under the decree,
had authority to make the sale, notwithstanding the proceed-
ings in insolvency.

With all due respect for the learning of the chancellor, we
cannot help thinking, his decision, in that case, is in conflict
with the principles announced in _Alexander vs. Ghiselin._

The petition of the appellee, asking that the trustee, under
the mortgage, might be restrained from selling, the counsel for
the appellant contend, is making the appellee a party to the
proceedings, and is a submission to the jurisdiction of the cir-
cuit court, in the premises, to such an extent as will prevent
him from successfully resisting the right of the appellant to
sell. In support of which position, reference has been made
to _Hutton vs. Hatton & Kendrick_, 4 _Gill_, 124. But that is
a very different case from this. There, it appears from the
opinion of the court, that after the first decree, a petition was
filed, which "recognized, ratified and confirmed, what had
been done," and asking that the purchaser, under the decree,

might be required to bring the purchase money into court, or that a re-sale of the property might be made. Then it is said: "After such a proceeding, and a ratification of the sale, and payment to him of the whole purchase money, and a conveyance of the land by the trustee to the purchaser, does it lie in the mouth of Henry D. Hatton to say, that the whole proceedings are null and void, because, at their incipiency, Mary E. Hatton was not summoned and made to appear, as directed by the act of 1816? By his petition to the court and receipt of the purchase money, he waived all objection to the irregularity of which he now complains, and should be estopped from asserting it, either at law or in equity." In a suit at law Hatton was attempting to treat as void, for irregularity, the decree, which, by his own petition in equity, he had recognized as correct, and under which he had actually received the whole proceeds of a sale made by virtue of the authority of that decree.

In the present case the authority of the court to pass the decree has not been disputed. But the ground taken by the appellee is, that by virtue of the subsequent proceedings in insolvency, the authority of the trustee to sell, under the decree, was superseded, and became vested in him. His petition, certainly, is not an express recognition or ratification, nor can it be regarded as an implied acknowledgment of any authority to sell, then existing, except his own. It asserts his right, and denies, in very explicit terms, any such authority on the part of the trustee under the decree. Nor has the appellee taken or received any benefit or advantage based upon or growing out of the proceedings in the mortgage case, which can be construed as a recognition of the appellant's authority to sell.. See *McCarty vs. Gibson*, 5 *Grattan's Rep.*, 307. *Norton vs. Cook*, 9 *Con. Rep.*, 314; and *Phillips vs. Allan*, 8 *Barn. & Cres.*, 477.

The position taken by the appellee has not been overruled, but sustained by the court, temporarily at least. The question now presented, therefore, is, whether the action of the court, not in opposition to, but sustaining the prayer of the petition, should be reversed, when such action is consistent

with a principle, correct in itself, if considered independently of any supposed applicability of the doctrine of estoppel, arising from the appellant's petition. To which question we feel constrained to answer in the negative, because we do not think the filing of such a petition is a sufficient ground for reversing the order appealed from, and therefore it will be affirmed, and the cause remanded without costs.

*Order affirmed and cause remanded.*