JAMES MACKUBIN *vs.* ROBERT R. BOARMAN, Trustee
in Insolvency of THOMAS WARD.

*Trustee in Insolvency—Mortgaged premises of the Insolvent—*
*Mortgagor in default—Exclusive right of the Trustee in*
*Insolvency to sell the Mortgaged premises.*

Where a mortgagor after default, applies for the benefit of the insolvent laws, and a trustee in insolvency is duly appointed, who
gives bond, which is approved, such trustee is the only person
entitled to sell the mortgaged premises, notwithstanding the
mortgage contained a power, in pursuance of section 5 of Article
64 of the Code, authorizing the mortgagee or his attorney to sell
the property in case of default.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE,
MILLER, ALVEY and ROBINSON, J.

*James Mackubin,* for the appellant.

*R. R. Boarman* and *Wm. Shepard Bryan,* for the
appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from a *pro forma* order of the Circuit
Court for Baltimore County, ratifying a sale of the real
estate of Thomas Ward, made by Boarman, his trustee in
insolvency. The facts by which the main question in the
case is presented, are briefly these: On the 1st of
December, 1870, Ward and wife mortgaged this real
estate to Arthur Pue to secure a loan of $7000, with inter-

est. This mortgage contained a power, in pursuance of sec. 5; of Art. 64, of the Code, authorizing the mortgagee "or James Mackubin" to sell the property in case of default. On the 11th of October, 1879, Ward applied for the benefit of the insolvent laws, and Boarman was duly appointed his trustee. Mackubin and Boarman both claimed the right to sell, and took the necessary steps for that purpose, the former under the mortgage and the latter as trustee in insolvency. The Court decided that the power in the mortgage was annulled by the application of Ward for the benefit of the insolvent laws, and that the trustee in insolvency could alone sell the property. The question then for our determination is, in which of these two parties is the power of sale vested?

This is one of the very few cases in which a question of this kind can now arise. The new insolvent Act of 1880, ch. 172, will govern as to all cases arising after its passage, and in that it is expressly provided that "if any real or personal property of the insolvent shall have been decreed to be sold by virtue of any decree of any Court of equity, *or advertised to be sold by virtue of any power contained in any mortgage or bill of sale*, the filing of the petition by or against the insolvent as herein before provided, shall *not disturb* the right of the trustee or other person so advertising, to proceed with such sale, unless otherwise ordered by the Court having jurisdiction in insolvency." This makes a clear and satisfactory provision for all future cases of this description, and settles the question by whom the power of sale shall be executed. The present case, however, arises under the old system of insolvent laws, and is to be determined by the construction and effect of those laws in connection with the power given to parties to contract in the mortgage itself, as provided in section 5, of Article 64, of the Code. Without doubt it is the settled construction of the former insolvent system that the application with the appointment of a

trustee supersedes and annuls every power of sale of the insolvent's property, vested in trustees under decrees in equity, whether passed upon mortgages or otherwise, as well as of sheriffs or constables acting under *fi. fas*, issued upon judgments. The cases cited by the appellee's counsel conclusively establish this proposition. But these decisions were made without reference to, and not in view of the 5th sec. of Art. 64, of the Code, and up to the present time no case has been decided by this Court to the effect that a valid conventional trust deed by which a debtor conveys a portion of his estate to a creditor to secure a *bona fide* debt, with power to the trustee to sell in case of default, could be set aside, and the power of sale vacated by the application of the debtor for the benefit of the insolvent laws. The case of *Zeigler vs. King,* 9 *Md.,* 330, was the case of a mortgage under the Act of 1833, ch. 181, in which the mortgagor had declared his assent to the passage of a decree for the sale of the mortgaged property, according to the terms of that statute, and in which a decree had been passed and a trustee thereby appointed to make the sale. In the case of *White & Elder vs. Malcolm,* 15 *Md.,* 529, the sale had been made by the attorney of the mortgagee under the provisions of the Act of 1826, ch. 192, before the mortgagor had petitioned, and the Court held that the purchaser acquired a good title under this sale, notwithstanding the subsequent application, and appointment of a trustee in insolvency. This is all that that case actually decides upon this subject. The Court rest their decision overruling the exception to the sale founded upon the fact of the subsequent application of the mortgagor for the benefit of the insolvent laws, upon the ground that the application was subsequent to the sale, and say, " there has been no case in Maryland in which it has ever been held that a sale of mortgaged property, actually made and reported for ratification to a Court having jurisdiction over the subject, has

been set aside simply because the mortgagor, after the sale and report thereof and before the ratification, became an insolvent petitioner and had a trustee appointed." Basing their decision upon this ground, the Court did not consider or decide what would have been the effect in that case where the sale was made in pursuance of the Act of 1826, if the application, and appointment of the trustee had preceded the sale. But the Act of 1826 is not identical in terms or effect with the section of the Code, under and in pursuance of which the power of sale was embodied in this mortgage. That section for the first time in the history of the legislation of this State, provides that "in all mortgages there may be inserted a clause authorizing the mortgagee, or any other person to be named therein, to sell the mortgaged premises, whether lands or goods and chattels, upon such terms and on such contingencies as may be expressed therein."

The privilege thus conferred is valuable and new so far as it depends upon the express terms of a statute. It enables the mortgagee, for the security and prompt collection of the mortgage debt to sell the property immediately upon default made by the mortgagor, without the previous authority of a Court or a decree, and to apply its entire proceeds to the payment of that debt without the deduction of commissions to a trustee either in insolvency or under 'the appointment of a Court of equity. In many instances the debt would be paid in full in no other way. It further enables the parties to contract as to who shall sell in case the mortgagee should not avail himself of the privilege. The selection may be made with reference to the special skill and ability of the individual selected, or by reason of the personal confidence reposed in him by both parties. This Court has held that such a power is a power coupled with an interest, a power intended for the benefit of the mortgagee, as affording him a more speedy and summary mode of collecting his debt than by the

ordinary proceeding to foreclose, a power appendant to the estate, and part of the security itself, a power which passes with the estate by assignment of the mortgage debt to the assignee thereof, whether he be an assignee in fact or in law, a power the execution of which is affected neither by the death nor the lunacy of the mortgagor. *Berry vs. Skinner,* 30 *Md.,* 567 ; *Dill vs. Satterfield,* 34 *Md.,* 52 ; *Harnickell vs. Orndorff,* 35 *Md.,* 341. In *Berry vs. Skinner,* the mortgagor, under proper proceedings to that end, had been declared a lunatic, and a committee of his estate and person duly appointed, who thereupon made application to the Court for an order to sell the mortgaged premises for the benefit of creditors generally. But it was held by this Court that such application could not have the effect to suspend the execution of the power by the mortgagee, that the latter could not be hindered or defeated or suspended in his rights, because of the misfortunes of the mortgagor, nor of his lunacy any more than any other misfortune unless provided for in the contract; that the mortgagee was constituted a trustee by the mortgage itself, to sell the mortgaged property on default of payment, and the Court has no power to deprive him of the summary means of realizing his debt, that formed part of the security upon which he advanced his money. Why then should the misfortune of insolvency have such effect? Why should it deprive the mortgagee of a valuable right and security which he has acquired under a valid contract with his debtor, a contract he is expressly authorized to make by a statute law of the State, passed by the same authority that enacted the insolvent system itself, and subsequent thereto in point of date? There are certainly no express words in the insolvent laws which constrain us to give them such a construction, and in the absence of any express decision of this Court to that effect, we are unwilling to extend their supposed policy so as to work a possible wrong and injustice to honest and

*bona fide* mortgagees who have secured to themselves contract privileges which are authorized and sanctioned by law. It is said in the decisions cited by the appellee, that it was the design of the insolvent laws to secure a prompt, single, and harmonious administration of the estate of the insolvent, and that this can only be effected by bringing all the parties interested before one and the same tribunal, whereby delays, the creation of adverse interests, and the possibly conflicting decisions of different tribunals will be prevented. But I think this doctrine has been carried quite far enough by the cases which have decided that trustees appointed under decrees in equity, and sheriffs or other officers having in charge the enforcement of judgments, must give way to the trustee in insolvency, and, as we have seen, a check has been given to the effect even of these decisions by the new law of 1880. I certainly discover in these laws no design or purpose to deprive the honest creditor of any right, privilege or security which the law gives him, or which he may have acquired under a binding and *bona fide* contract with his insolvent debtor, nor do I think their efficacy will be at all impaired if they be held not to have such effect.

These are my views upon this question, but my Brothers who heard the case with me do not concur, and are of opinion that the case falls within the scope of the principles settled by the decisions referred to by the appellee's counsel, and that the trustee in insolvency is alone entitled to make the sale. The doctrine upon which they rely is very clearly stated in the case of *Alexander vs. Ghiselin*, 5 *Gill*, 179, thus:—" The leading and general design of all bankrupt and insolvent laws, is to insure a prompt and complete settlement of all the affairs of the party, and an early distribution amongst the creditors, as nearly in equal proportions as a regard to positive and acknowledged preferences will admit. To facilitate these objects, our law has wisely given to the trustee, to be

appointed by the Court, the entire management of the estate, subject of course to the control of the Court by whom he is appointed, charging him with the duty of paying off liens and incumbrances to which the estate might be subject. His duty requires him to make the earliest disposition and settlement regarding the interests of all the creditors—the particular lien creditor included—and brings all the claimants before one tribunal, whereas, by allowing sheriffs and mortgagees to participate in the administration of the trust, adverse interests are created, delays endangered if not ensured, and probably different, and possibly conflicting tribunals consulted." This construction was affirmed in *Glenn vs. Gill*, 2 *Md.*, 18, and reiterated in *Zeigler vs. King*, 9 *Md.*, 335, in which last case the opposing decision of the Chancellor in *Hurt vs. Stull*, 4 *Md. Ch. Dec.*, 391, is overruled. By the decision in that case it is clearly settled that a trustee under a decree in equity for the sale of mortgaged property, where the mortgage itself provided for the passage of such a decree, cannot proceed with the sale, though he had advertised the property, where the mortgagor before the day of sale had applied for the benefit of the insolvent laws, and his trustee in insolvency had been appointed and had given bond. In the opinion of the majority there is no well founded distinction between a sale under such a decree, and one authorized to be made by the mortgagee himself or by some party named in the mortgage, as provided in sec. 5, of Art. 64, of the Code. The result therefore is, that this Court determines that the trustee in insolvency is the only party authorized to sell the mortgaged premises in the present case. But while this is so, we are all of opinion the *pro forma* order ratifying the sale made by him, should be reversed and a new sale take place. It is apparent from the record that by reason of the assertion of the conflicting claims of these parties as to the right to sell, the property was brought into market under such

circumstances as absolutely to prevent a fair sale. To affirm the sale thus made might result in a grievous wrong and injury to the mortgagee, and it cannot be permitted to stand. In fact the appellee himself in argument not only made no objection to the reversal of the order, but agreed that it was proper under the circumstances that a new sale should be had. We shall therefore reverse the order, and remand the cause.

*Order reversed, and*
*cause remanded.*

(Decided 2nd July, 1880.)