WILLIAM HIGGINS, WILLIAM TRAVERS AND ANN TRAVERS HIS WIFE, AND OTHERS, *vs.* ORVILLE HORWITZ.—*December* 1850.

By the act of 1836, ch. 128, sec. 2, a complainant has authority under the commission in chief, to take all the testimony necessary to sustain his case, as well against defaulting as other defendants. and such commission dispenses with the execution of an *ex parte* commission issued under the act of 1820, ch. 161.

An interlocutory decree was passed against two defaulting defendants, and an *ex parte* commission ordered. On the same day the guardian of an infant defendant appeared, and a commission was then issued to commissioners, " as named on the part of complainant and defendants," requiring notice to be given " to the respective parties." HELD : That this was a commission in chief.

Where an infant answers by guardian, admitting the facts stated in the bill or making no defence, the act of 1836, ch. 128, sec. 1, connects and binds the interest and defence of such infant with that of the other defendants, and the evidence taken for the complainant under a commission issued in due form, necessarily operates against all the defendants.

This act of 1836 assumes for the court the duty to see, that no substantial rights of the infant are injuriously affected by the proceedings under the commission, and in the cause.

Whether notice of the execution of a commission be served on the guardian to the infant or his solicitor, it is in view of the act of 1836, surplusage, and can vitiate nothing that is presumed to have been done under it.

The practice that occasionally occurs, of making the complainant the trustee for the sale of the property under the decree, is objectionable.

APPEAL from the equity side of *Baltimore* county court.

This appeal was taken from a decree for the sale of certain leasehold property mortgaged by the appellant, *William H. Travers*, to the appellee. The facts of the case and the objections to the decree are fully stated in the opinion of this court.

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK, J.

By BRENT, for the appellants, and
By WM. SCHLEY, for the appellee.

FRICK, J., delivered the opinion of this court.

The bill in this case was filed by the appellee to forclose two mortgages executed by *William H. Travers*, of certain leasehold estate, acquired in right of marriage with *Ann C. Martin*, his wife. The bill was orignally filled against *Travers* alone.

Subsequently the bill was amended to show that after the execution of these mortgages, *Travers* had conveyed all his equity of redemption to *William Higgins*, in trust for *Ann C. Travers*, his wife, for life, and after her death for *Emma A. Travers* an infant; and that afterwards *Travers* having become insolvent, *R. Ridgely Battee*, was appointed his trustee under the insolvent laws.

A commission was regularly issued to appoint a guardian for the infant defendant, and her answer filed, together with the answer of all the other defendants, except *Higgins* and *Ann Travers*. Against these two, an interlocutory decree was signed under the act of 1830, ch. 161, and an order given to issue the usual commission *ex parte*.

Afterwards a commission appears to have issued to *John Carrere* and *Joseph B. Williams*, "*named by the complainant and defendants,*" to take testimony in the cause, and the solicitors of the defendants who had appeared, and of the guardian *ad litem*, were regularly notified to attend the commission, which was thereupon duly executed, and returned upon the 24th of May 1849. The cause was then, on the 13th of June following, submitted by written agreement of the complainant, and the solicitors for all of the defendants who had answered, and a decree of foreclosure and sale, appointing the complainant to make such sale, 'was passed on the 15th of June 1849.

From this decree an appeal has been brought to this court, upon various alleged irregularities in the proceeding, which it is contended present a case for reversal of that decree.

The principal objection upon which most of the errors suggested arise, is upon the appellants' 1st Point. "That the commission to take testimony issued to *Carrere* and *Williams* ir-

regularly and contrary to law, so far as all the defendants were concerned except *Higgins* and *Ann Travers.*"

This objection means that the commission mu t be regarded as *ex parte,* and consequently binds none other than the parties to the interlocutory decree, because the order directing the commission proceeds from the complainant, who himself names the commissioners. That consequently, no opportunity was offered to the defendants to select or strike commissioners, and as to them, the commission of whatever character was improvidently issued.

The inspection of the commission found in the record, does not support this view. It is true it is directed to *Carrere* and *Williams,* the parties before named by the complainant, and when perhaps he intended a commission *ex parte.* But afterwards, and on the same day, the guardian of the infant appeared in court by solicitor, and we then find the style of this commission runs to these commissioners as "named on the part of the complainant and defendants." It is not therefore such a commission under the act of 1820, ch. 161, as is exclusively for the benefit of the complainant, and where the testimony is confined to proof of the allegations of the bill against the defaulting defendants, and as intended to operate against these exclusively, no notice to the other defendants is necessary. In the commission before us notice is required to be given "to the respective parties;" of course to the defendants who have answered. And the commissioners further certify that such notice was given to the solicitors of the defendants, and of the guardian *ad litem* of the infant defendant. Looking to the whole tenor of the commission and its terms, it would indicate that the commissioners were properly struck, or what is equivalent and equally binding, that they were selected by consent between the complainant and defendants themselves, and so selected, the testimony taken under it, must affect all parties notified of the action of the complainant upon it.

That there was an outstanding order for a commission *ex parte,* cannot affect the case, whether such commission was or was not issued. If there be a commission in chief, as

we construe this to be, the execution of the other is dispensed with by the act of 1836, ch. 128, sec. 2, by which the complainant has authority under the commission in chief, to take all the testimony that may be necessary to sustain his case, as well against defaulting as against other defendants, who are parties to the commission.

But it was said, 2nd. "That the notice of the execution of this commission served upon the solicitor of the guardian, and not upon the guardian himself, cannot bind or give effect to this testimony against the infant."

This objection, we think, is answered by this same act of 1836, ch. 138, in the first section, which would seem to point expressly to the embarrassment and difficulty which would often result from the peculiar privileges attached to infants, and the wholesome protection with which the law surrounds their rights.   It provides that when the answer of the infant is in, admitting the facts stated in the bill, or making no defence to the claim of the complainant, a commission to take testimony may then *issue in the usual form, &c.*   This assumes for the court the duty, at all times expected from them, to see that no substantial rights of the infant shall be injuriously affected by the proceedings under the commission and in the cause.   And whether the notice of the commissioner was to the guardian or his solicitor, it is in view of this act of Assembly, surplusage; and can vitiate nothing that is presumed to have been done under it.

The validity of the commission, and the proceedings so far being sustained, it is presumed that the appellant's counsel in this position of it, does not intend to reply upon his *third objection:* " That the cause was submitted for hearing prematurely, and there was no sufficient consent to justify the submission." The cause, by the written agreement of complainant, and the solicitor for those defendants who had answered, was submitted for a decree.   The submission is within the express provision of the act of 1846, chap. 60, sec. 2, and is in all respects free from objection.

On the *4th Point* we think there was no necessity for

the proof of the insolvent proceedings against *Travers* and the appointment of *Battee* as his trustee. The allegation in the amended bill, and his own admission by his answer, are enough for the purposes of this case. He was properly introduced into the cause, to assert the rights of the creditors of *Travers*, and to controvert the allegations of the bill, if susceptible of denial. But he admits the facts, or has not the means to controvert them. And what are they so far as he is concerned? That the insolvent was entirely divested of all interest in the property before his application, and that consequently, not a shadow of right passed to his trustee or his creditors, unless the conveyance was a fraud upon the insolvent laws. The trustee, however, does not impeach it; none of the other defendants controvert it. They in fact received the benefit of it. *Prima facie* then, the deed is good, unless some provision of the insolvent laws forbid it; and *Travers* having parted with all title and equity, left nothing to vest in his trustee. *Battee*, therefore, whether *proved* to be the trustee or not, if the creditors can assert no claim to the property, cannot affect the right of the complainant to have it sold by the regular and usual proceedings in a court of equity. And this state of the property, and the parties, disposes of the fifth point, which claims for the trustee of the insolvent, the right to sell and distribute the property, in which neither he nor the creditors he represents, have a shade of interest either vested or contingent.

6TH POINT. The regularity of the commission being established, this objection to the proof of the conveyances in the record, falls with the objection to the commission. They are regularly proved as originals, by the subscribing witnesses, or as authenticated copies from the records. The effect of this evidence being no longer *ex parte*, (as was contended,) extends to all the defendants defaulting or answering; and the 1st sec. of the act of 1836, by the proper course of proceeding in this cause, connects and binds the defence and the interest of the infant defendant, with that of the other defendants in the cause; so that evidence necessarily operates against all.

7TH POINT. The appellants have suggested yet another

error in the proceedings, which is, that the complainant him-self was erroneously appointed the trustee.    There is more reason and force in this objection than validity in law; and it is, at least, entitled to a passing notice from the court.

There is an obvious objection to the practice that occasionally occurs, of constituting the complainant himself, the party to make the sale of mortgaged property, when the trustee ought to be a person entirely disinterested between the parties, and free from all temptation to abuse his trust.    His relation ought to be, as far as possible, impartial between the parties, and free from the seductions of personal interest, to conduct the sale to his own advantage.    Cases might be readily suggested where an unscrupulous trustee, regarding his own rights alone, and looking to his own interest, might press the sale to the preju-dice of other postponed claimants upon the property, whose rights it should be his particular duty and trust to protect.    Con-venient opportunity is presented for collusion, if an unprinci-pled complainant should be disposed to practise it.    His own claim in priority, gives him facilities to make himself the owner of the property, by sacrificing the interest of other creditors and claimants.    He has advantages and temptations which he ought not to have; and the character of claimant and trustee, for these reasons, should never be united.    They are incompa-tible; and to insure equity and justice, should be always anta-gonist.    Likened to the case of sheriffs and many other officers of court, complainants, as trustees, should not be clothed with the execution of proceedings in which they are parties in in-terest.    In these analogous cases, the law wisely forbids it. And the reason and policy are the same in the case of trustees in chancery; but the practice has been otherwise; and although this court may think it reprehensible, and may not sanction it by their opinion, yet in the proceedings now before us, we are not at liberty to pronounce it error.    The decree of *Baltimore* county court is therefore affirmed.

DECREE AFFIRMED.