(Decided June 14th, 1859.)

---

## St. George W. Teackle, Trustee, *vs.* Joseph Crosby and John Bevan.

The failure of an applicant for the benefit of the insolvent law, to exhibit with his petition "a schedule of his property and a list of debts due from and to him, with the names of his debtors and creditors, all verified by affidavit," as required by the Act of 1854, ch. 193, sec. 1, cannot have the effect of *rescinding* the *appointment* of the trustee made upon such application.

Such failure will, however, debar the applicant from obtaining a *release* from his debts until he does comply with such requirements, and (being a resident of Baltimore city) his case should be remanded by the Court of Common Pleas to the commissioner, for the purpose of giving him an opportunity so to comply.

The fact that the person appointed trustee did not represent any of the creditors, but was counsel for the applicant, is no sufficient ground for rescinding his appointment.

The trustee of an insolvent debtor may appeal from an order erroneously rescinding his appointment, for in such a case he is a "*party interested*" within the meaning of the 20th sec. of the Act of 1854, ch. 193.

APPEAL from the Court of Common Pleas.

This is an appeal from an order of the court below, in the matter of the application of Edward Higgins for the benefit of the insolvent laws.

Higgins made his application on the 30th of March 1858, but filed no schedule of debts due him, or list of his debtors, and did not refer to any such debts or debtors, except in these words, on the first page of his papers, viz:

"Debts due me amount to about $1500, in hands of trustee for benefit of my creditors.

(Signed)    "EDWARD HIGGINS."

On the second page the following is added:

"A list of debts due and owing to Edward Higgins, as far as he can at present ascertain them."

"See first page."    (Signed)    "EDWARD HIGGINS."

On the same day the commissioner authorised to act in the premises, by the 17th sec. of the Act of 1854, ch. 193, appointed the appellant trustee, who gave an approved bond, received from the insolvent a deed of all his property of every kind and description, and filed the usual certificate that he had received from the insolvent all the property and evidences of debt mentioned in his schedule.

On the 21st of April 1858, the appellees, creditors of Higgins, filed a petition alleging that he did not exhibit with his petition a schedule of his property and a list of the debts due from and owing to him, with the names of his debtors and creditors, all verified by affidavit, and that the appointment of the appellant as trustee was against the policy of the law, because he was the counsel of Higgins and did not represent any of his creditors; and upon these grounds they ask that the proceedings of the commissioner and the appointment of the trustee may be annulled and revoked, and the petition of Higgins dismissed.

The answer of the appellant to this petition refers to and relies upon the schedule and list of debts above mentioned, and the deed to him from the insolvent, and states, that the trustee has in his possession the schedule of debts due to Higgins, referred to in his petition, and is ready, and prays leave

to file the same with the commissioner. The answer admits, that the trustee was, at the time of his appointment, the general counsel of Higgins, but denies that his appointment was, for that reason, in conflict with the policy of the insolvent laws, or that he has any interests adverse to those of the creditors.

Upon this petition and answer, the court, (MARSHALL, J.,) on the 24th of April 1858, passed an order, rescinding the appointment of the trustee as having been prematurely made, and remanding the application to the commissioner, with directions, that "in case the said Higgins shall file full and sufficient lists of his debtors and creditors, under oath, to the best of his knowledge and belief, and as far as he can ascertain the same, but not otherwise, the said commissioner shall proceed to appoint a trustee as if the said schedules and lists had been originally filed with the said commissioner." From this order the trustee appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*I. N. Steele,* for the appellant, argued:

1st. That the proceedings under the insolvent law of this State need not show precise conformity with the act by which they are authorised, and are not subject to the strict rule generally applicable to proceedings under a limited or special jurisdiction. 3 *H. & McH.,* 350, *Chaplin vs. Shoot.* 5 *H. & J.,* 189, *Winingder vs. Diffenderffer.* 1 *Gill,* 215, *Bowie vs. Jones.* The requirements of the Act of 1854, ch. 193, are *directory* merely in reference to the schedules and *list of debts.* 3 *Greenlf's Rep.,* 297, *Mussey vs. White, et al.* 7 *Hill,* 24, *Striker vs. Kelly.* 5 *Cowen,* 269, *Jackson vs. Young.* There is nothing in the Act which makes the filing of lists of debtors and creditors a *condition precedent* to the court's granting a personal discharge.

2nd That the application of Higgins for the benefit of the insolvent laws, by *filing his petition* with the schedules and affidavits accompanying it, not only authorised, but made it

the legal duty of the commissioner to appoint a trustee for the benefit of creditors; and that this appointment, having been thus legally made, could not, in the absence of misconduct on the part of the trustee, be revoked or rescinded by the court. The *jurisdiction* of the court to appoint the trustee attached upon the *filing of the petition.* 1 *Gill*, 215, *Bowie vs. Jones.* 10 *Md. Rep.*, 155, *Buckey vs. Snouffer.* The 2nd sec. of the Act of 1854, ch. 193, requires the court to appoint a trustee, and vests in him all the applicant's property, both that enumerated in the schedules, and that *not so enumerated;* and, by the 16th and 17th secs., the clerks and commissioners have power to appoint the trustee, which power would not have been given to these ministerial officers if the Legislature had supposed they were to decide *questions of law* in regard to the sufficiency or insufficiency of the schedules, and lists of debtors and creditors to authorise the appointment of a trustee in any particular case. These provisions show that the Legislature intended that the mere filing of the petition should give jurisdiction over the case to appoint the trustee. The 11th sec. gives the court power to remove the trustee for misconduct, and appoint another in his place, and the whole design and spirit of the law is, while granting relief to the debtor, at the same time to protect the interests of creditors, and this is done by the immediate appointment of a trustee, who, as soon as he is appointed and files his bond, takes the entire property of the debtor out of his possession for the benefit of his creditors, subject to the control of the court by whom he is appointed. 1 *Md. Rep.*, 471, *Waters vs. Dashiell.* 9 *Gill*, 452, *Baylies & Tyson vs. Ellicott.* If the appointment of the trustee is invalid by reason of defects in his schedules or lists of debtors, then the property would revert to and vest in the applicant, whereas the policy of the insolvent law is, to grasp the property for the benefit of creditors. 4 *G. & J.*, 392, 393, *Glenn vs Karthaus.* It is therefore submitted:

3rd. That from the time of the application of an insolvent debtor, his property is in the custody of the law for the benefit of his creditors, and for the protection of their interests the law requires the prompt appointment of a trustee; that this

3      v. 14.

appointment ought not to be delayed by a defect or irregularity in the schedules, when there is substantially an offer by the applicant to surrender all his property for the benefit of his creditors, because such a surrender is all that the policy of the insolvent law requires of him, and the creditors have ample protection against injury from such defect, in their right to file interrogatories, and prevent the discharge of the applicant if he does not satisfactorily explain and supply the defects and omissions of his schedules.

4th. That the omission of Higgins to give the names of his debtors, in his list of debts, was not, under the circumstances of this case, a material or substantial defect.

5th. That the selection of a trustee is confided exclusively, by the Act of 1854, to the court or officer making the appointment.

6th. That from this order the *trustee* had the right to appeal. The 23rd sec. of the Act of 1854, repeals expressly all the prior insolvent laws, and the 20th sec. declares, that *any person interested* may appeal from the decision of the court on *any question* under this Act. The trustee's right of appeal in such a case as this, is fully recognized by the case of *Salmon vs. Pierson,* 8 *Md. Rep.,* 297.

*S. T. Wallis,* for the appellees, argued:

1st. That the power of the Court of Common Pleas, or its commissioner, to appoint a trustee in insolvency, is a special and limited power, confined exclusively to cases and modes prescribed by the Act of Assembly, and not capable of being rightfully exercised until after due performance of the conditions precedent, which the Act imposes. Whatever may have been the disposition of this court, where proceedings in insolvency have come incidentally in question, to relieve them from the operation of the rigid rule as to the proceedings of courts of limited jurisdiction, there has been no variation of that rule in respect to such proceedings before the insolvent courts themselves, and they are held, as all other special jurisdictions, to the course of procedure prescribed by the statutes conferring their powers. 5 *H. & J.,* 132, *Shivers vs. Wil-*

*son.* 1 *Gill*, 215, *Bowie vs. Jones.* 2 *H. & G.*, 50, *Raborg vs. Hammond.* 9 *Gill*, 241, *Powles vs. Dilley. Ibid.*, 146, *Hall vs. Sewell.* 11 *Md. Rep.*, 481, *Campbell vs. Webb.* 2 *G. & J.*, 80, *Winchester vs. Union Bank.* 10 *G. & J.*, 293, *Owings vs. Worthington. Ibid.*, 385, *Stone vs. Magruder.* 1 *Gill*, 381, *Boarman vs. Israel.*

2nd. That the exhibition of "a *list* of debts due from and owing to" the applicant, "with the names of his debtors and creditors, all verified by affidavit," is a necessary *preliminary* to the right to appoint a trustee, under the Act of 1854. 12 *Wheat.*, 81, *U. S. Bank vs. Dandridge.* 12 *Sergt. & Rawle*, 306, *Bank of Northern Liberties vs. Cresson.* Such requirements are not merely formal or unimportant, but are founded upon a wise policy, and are essential matter of substance. If a list of the debtors be not filed, the court may, unknowingly, appoint the principal debtor trustee. If a list of the debts be omitted, those debts may be attached by any creditor, notwithstanding the application and appointment of the trustee, and the execution of a deed to him. By collusion between the applicant and a favored creditor, the latter might have his claims fully satisfied out of the debts not mentioned in the schedule, while the insolvent might obtain his discharge, notwithstanding his having given such preference. The opportunity for collusion would be doubled in the case of a trustee furnished with a list of the debts and debtors which is not filed, and enabled thereby to point out to favored creditors, if corruptly disposed, the opportunity of seizing, perhaps, the most valuable assets. That no such possibility is practically supposable in the present case, does not affect the principle or the importance of the conditions in question. *Act of* 1854, *ch.* 193, *secs.* 1, 2, 15.

3rd. That at the time the application was made, and the debts due Higgins were stated to be "in the hands of trustee for the benefit of creditors," there was no such trustee in existence, and the allegation amounted to nothing more than a statement, that the lists required by law to be filed, before a trustee could be appointed, were not filed, but were retained in the hands of the applicant's private counsel, or of the ap-

plicant himself. The allegation itself shows, that the failure to file lists was not a mere mistake, and arose out of no difficulty in the applicant's ascertaining the names of his debtors, or specifying what was due him, but was a voluntary and inexcusable omission.

4th. That the Court of Common Pleas had the right to review and correct the irregular action of the commissioner in the illegal appointment of the trustee. *Cons., art.* 4, *sec.* 10. *Act of* 1854, *ch.* 193, *secs.* 16, 17.

5th. That the trustee has no right of appeal in this case, not being "interested" in the sense of the statute. *Act of* 1854, *ch.* 193, *sec.* 20. 8 *Md. Rep.*, 297, *Salmon vs. Pierson.* 4 *Md. Rep.*, 85, *Ellicott vs. Warford.* 3 *Md. Ch. Dec.*, 302, *Colvin's Estate.*

ECCLESTON, J., delivered the opinion of this court.

The Act of 1854, ch. 193, sec. 1, authorises an insolvent to make application, as such, by a petition stating his insolvency, and offering to deliver up, for the benefit of his creditors, all his property, real and personal, and "exhibiting therewith a schedule of his property, and a list of the debts due from and owing to him, with the names of his debtors and creditors, all verified by affidavit," &c., &c.

Edward Higgins filed his application for the benefit of the insolvent law, on the 30th of March 1858, and on the same day, the commissioner of insolvents, for the city of Baltimore, appointed St. George W. Teackle trustee, who gave a bond as such, which was approved, and received from the insolvent a deed of all his property. The trustee also filed the usual certificate, that he had received from the insolvent all his property and evidences of debt mentioned in his schedule.

Subsequently, on the 21st of April 1858, the appellees, as creditors of Higgins, filed their petition, charging, that he had filed his petition for the benefit of the insolvent law, but had not "exhibited therewith," as required by law, "a schedule of his property, and a list of the debts due from and owing to him, with the names of his debtors and creditors, all verified by affidavit." The appellees, in their petition, also objected

Teackle, Trustee, vs. Crosby & Bevan.

to the appointment of Mr. Teackle as trustee; and prayed that the proceedings of the commissioner, and the appointment of the trustee, might be annulled and revoked, and the petition of Higgins be dismissed.

After the trustee had put in his answer, the court passed an order rescinding the appointment of the trustee, upon the ground of its having been prematurely made. By the same order, the application of Higgins was remanded to the commissioner, who was ordered and directed to appoint a trustee as if sufficient schedules and lists had been originally filed; provided Higgins should file full and sufficient schedules of his debts and credits, with full and sufficient lists of his debtors and creditors, under oath, and as far as he could ascertain the same, but not otherwise.

From this order the trustee has appealed.

Higgins certainly failed to comply with the provisions of the Act, and his failure to do so ought to debar him from obtaining a release from his debts until he does comply with the requirements of the statute. Such, we think, was the design of the law, but we cannot suppose it ever was intended that such a failure on his part should have the effect of rescinding the appointment of his trustee.

It is, manifestly, one of the main objects of the insolvent system to have the property of the applicant placed, promptly and securely, in the hands of a trustee, to be converted into money and distributed amongst the creditors as speedily as practicable. If he is to be removed, merely because of the insolvent's non-compliance with the law, in the particulars mentioned, and no other trustee is to be appointed until the insolvent does comply, it will be allowing his misconduct to prejudice, delay and hinder the creditors, without any neglect or fault on their part, or that of the trustee. An interpretation of the law producing such consequences could not have been intended by the Legislature, nor would it be calculated to insure a compliance with its provisions. But a more reasonable interpretation, and much more likely to have the requirements of the Act complied with, would be to retain the trustee, and at the same time deny to the applicant a final discharge until he does comply.

The appellees, in their petition, also urged, as a reason for removing the trustee, that he "did not represent any of the creditors, but was counsel for the applicant." This, where, in other respects, the trustee is an unexceptionable person, cannot be a sufficient ground for rescinding the appointment, and ordering another trustee to be appointed only when the insolvent shall have "filed full and sufficient schedules of his debts and credits, with full and sufficient lists of his debtors and creditors, under oath."

From what has been said, it will be seen, that we concur with the judge below in regard to so much of the order appealed from, as remanded the case to the commissioner for the purpose of giving the insolvent an opportunity of complying with the provisions of the Act of 1854. But we think the said order is erroneous, because it rescinded the appointment of the trustee. The decision will, therefore, be affirmed in part and reversed in part, with costs to the appellant, and the cause will be remanded, so that the principles announced in this opinion may be carried into effect.

One of the points presented by the counsel for the appellants is, "That the trustee has no right to appeal in this case, not being 'interested' in the sense of the statute."

To sustain this view reference is made to *Rachel Colvin's Estate*, 3 *Md. Ch. Dec.*, 302. *Ellicott vs. Warford*, 4 *Md. Rep.*, 85. *Salmon, Trustee of Boon, vs. Pierson*, 8 *Md. Rep.*, 297.

In the first two of these cases the decisions were, that a receiver in chancery had no right to appeal from an order discharging him. In both cases the nature of his office is spoken of. In 4 *Md. Rep.*, the court say: "The appointment of a receiver does not determine any right, or affect the title of either party, in any manner whatever. He is the officer of the court, and truly the hand of the court. His holding is the holding of the court from him from whom the possession was taken. He is appointed on behalf of all the parties, and not of the plaintiff, or of one of the defendants only. His appointment is not to oust any party of his right of the possession of the property, but merely to retain it for the benefit of the

party who may ultimately appear to be entitled to it. And when that is ascertained the receiver will be considered as his receiver."

In 3 *Md. Ch. Dec.*, it is said: "The court must act by its officers and agents, and there is as much propriety in calling the court the representative of any of the parties to the cause, as its agents and officers, who derive their authority from the court, and are removable at its discretion."

The 2nd section of the Act of 1854, declares expressly, that all the property, of every description, of the insolvent, "the necessary wearing apparel and bedding of himself and family, or such property as may by law be exempted from execution, excepted," shall vest in the trustee.

He, therefore, is not merely a receiver holding possession of the property, as the hand of the court, but the title is actually vested in him, in trust for the use and benefit of the creditors generally, although they may not appear to be parties to the proceedings in which he is appointed. A decision which denies to a receiver the right to appeal from an order discharging him does not necessarily warrant the conclusion, that the present appeal cannot be sustained.

In 8 *Md. Rep.*, the claim of the appellee, against the insolvent estate was allowed by the auditor. The trustee excepted, which exception was overruled, and the court allowed the claim. The appeal of the trustee, from this decision, was dismissed upon the ground that the relation of the trustee to the estate did not authorize him to object to the *claims of creditors*, who might, if they pleased, litigate, *inter sese*, as actors, in reference to the same subject matter. The question there under consideration was, whether the claim of a creditor had been properly allowed in the distribution of the assets of the estate? In such a case, this court decided, the trustee could not appeal. It is there said, however, "If he has an interest, as trustee, in reference to his allowance for commissions and expenses, or as creditor of the insolvent, he has an equal right, with others, to object to the distribution and to appeal." If he may appeal where a distribution injuriously affects his interests, "in reference to his allowance for commissions," he

surely ought to be entitled to appeal from an order which erroneously rescinds his appointment, thereby depriving him of his trusteeship entirely.

*Salmon, Trustee of Boon, vs. Pierson,* was an appeal under the Act of 1849, ch. 88, which the court held to embrace only, "persons aggrieved by the action of the court below." The present case comes before us under the 20th section of the Act of 1854, which provides, "That any person interested may appeal from the decision of the court on any question under this act." This appeal presents *a question arising under that Act,* and we think the trustee is *interested* in the decision thereof.

> *Affirmed in part, and reversed in part, with costs to the appellant; and cause remanded for further proceedings.*

(Decided June 16th, 1859.)

LE GRAND, C. J., dissented.