AMBROSE A. WHITE and FRANCIS W. ELDER vs.
JAMES MALCOLM, and others.—T. PARKIN SCOTT
vs. SAME.—CHARLES WEBB vs. SAME.

An appeal lies from a decree or decretal order passed by the court in a
case where a sale of mortgaged property has been made and reported,
under the Act of 1826, ch. 192.

The trustee, agent or attorney for the mortgagees, by whom the sale, un-
der the Act of 1826, ch. 192, was effected, may appeal from an order
setting aside such sale, because such order injuriously affects his claim
for commissions.

The 10th sec. of the Act of 1825, ch. 203, requiring thereafter all mort-
gage sales to be made in the county where the mortgaged premises are
situated, applies only to sales under *that* Act; it is no objection to a sale
under the Act of 1826, ch. 192, that it was made in the city of Balti-
more, and not in Baltimore county, where the land was situated.

An advertisement or notice of sale, under the Act of 1826, ch. 192, de-
scribes the land to be sold as lying in Baltimore county, on or near the
Philadelphia road, and refers to the mortgage thereof, and then in de-
scribing the five lots or parcels, into which it was divided, gives the num-
ber of acres in each, refers to the deeds by which each was conveyed
to the mortgagor, and describes the first as about five, the second about
seven and a half, the third and fourth about nine, and the fifth about
twelve miles out from Baltimore city. HELD:

That there was no ground for setting aside the sales on account of the de-
scription of the property given in this notice, being insufficient.

A bond given by the attorney, agent or trustee of the mortgagee, where the
sale is made by such attorney, agent or trustee, is a compliance with the
requirements of the Act of 1826, ch. 192, as to a bond.

The Act of 1826, ch. 192, requires, at least, "twenty days notice in two
or more of the daily newspapers published in said city, of the time,
place, manner and terms of sale," to be given. The sale took place on
the 20th of November 1858, and the land was situated in Baltimore
county. The advertisement was inserted in two daily newspapers, pub-
lished in Baltimore city, on the 2nd of November, and was continued in
these papers, twice a week, from that day to the day of sale. It was
also inserted in two weekly newspapers published in Baltimore county,
commencing on the 6th of November, and continued weekly till the day
of sale. HELD:

That this was a sufficient compliance with the law; the Act does not re-
quire twenty days *daily notice*, or that the notice should be inserted
twenty times in two daily papers.

The Act of 1826, ch. 192, prescribes no special terms of sales; it does not
say whether they shall be for cash or on credit, and the terms of "one-

third cash, and the balance in six or twelve months, with interest and security," being reasonable, and not prohibited by law, present no valid objection to a sale.

The fact that the trustee, under the Act of 1826, did not, in his report, state the terms of sale, nor a compliance with them by the purchaser, is not, in the absence of proof of fraud, surprise or undue advantage, sufficient to set aside the sale; the trustee should have been allowed and required to amend his report by correcting the omission so far as the facts would warrant.

When a sale has been made, under a mortgage or decree before the application of an insolvent, the rights of the purchaser will be respected and sustained, and a sale under the Act of 1826, ch. 192, will not be set aside because the mortgagor after the sale and report thereof, and before the ratification, became an insolvent petitioner and had a trustee appointed.

The Act of 1826, ch. 192, provides that all persons interested in the mortgaged property, "may, at any time within twenty days after the sale thereof, file the reasons, if any exist, why the said sale should not be affirmed." HELD:

That this provision does not prevent exceptions after the twenty days, but prohibits the ratification for that period, thus securing that length of time for presenting objections; and exceptions may be filed at any time *before* ratification of the sale.

APPEALS from the Circuit Court for Baltimore county.

These appeals are taken from an order of the court below, (PRICE, J.,) setting aside certain sales of real estate in Baltimore, which had been mortgaged by Robert Howard to White and Elder. The sales were made under the Act of 1826, ch. 192, by T. Parkin Scott, as attorney, agent or trustee for the mortgagees, and the appellant, Webb, was a purchaser of a part of the property sold. The notice or advertisement of sale is as follows:

"SALE OF MORTGAGED PROPERTY IN THE COUNTY.

Under authority from Ambrose A. White and Francis W. Elder, the undersigned, attorney and trustee, will offer at public sale, at the Exchange sales rooms, No. 19, South Gay street, Baltimore city, on Monday the 29th day of November 1858, at one o'clock, P. M., all the following described lands and premises, situate and lying in Baltimore.county, on or near to the Philadelphia road, and which property was mortgaged by Robert Howard and wife to said White & Elder,

by deed dated 6th October 1857, recorded in Liber H.M.F., No. 9, folio 138, &c., viz:

1. All that part of 'Gay's Enlargement,' containing seventy-five acres and twenty perches of land, more or less, binding on said Philadelphia road, about five miles out, and particularly described in a deed from White & Elder to said Howard, dated 19th June 1854, recorded in Liber H.M.F., No. 8, folio 525, &c.

2. All that part of lot No. 44, of the Principio Company's lands, about seven and a half miles from Baltimore city, containing one hundred and eighteen acres, three roods and two perches of land, described in a deed from Joshua H. Dulaney and wife to the said Robert Howard, dated 18th September 1845, recorded in Liber A.W.B., No. 357, folio 117, &c.

3. All that part of lot No. 55, of the Principio Company's lands, about nine miles from Baltimore city, binding on the Philadelphia road, containing one hundred and thirty-four acres, of land, described in a deed from Tagart and Holloway, trustees, to said Howard, dated 3d December 1852, recorded in Liber H.M.F., No. 4, folio 11, &c.

4. All those lands and premises, about nine miles from Baltimore city, containing seven hundred and eighteen acres of land, described in a deed from Mary Louisa Ridgely and John Glenn, administrators, to said Howard, dated 1st July 1848, recorded in Liber A.W.B., No. 339, folio 137, &c.

5. All that land, about twelve miles from Baltimore city, binding on the Philadelphia road, containing seven hundred and fifty acres of land, described in deed from J. Pennington, executor of Prudence Howard, to said Robert Howard, dated 22d May 1848, recorded in Liber A.W.B., No. 397, folio 45, &c.

The terms of sale are: one-third cash, and the balance in six and twelve months, with interest and security.

T. Parkin Scott,<br>
*Trustee and Attorney.*

S. H. Gover, *Auctioneer*."

The exceptions and other facts of the case are sufficiently stated in the opinion of this court.

The cause was argued before ECCLESTON, TUCK and
BARTOL, J.

*T. Parkin Scott* and *Wm. Schley*, for the appellants,
argued:

1st. As to the *first exception,* 1st. That Howard, by the
deed of the 25th of January 1858, conveyed all his equity
of redemption in the mortgaged premises to the Great Falls
Iron Co., eleven months before his application for the bene-
fit of the insolvent laws, so that nothing in that property
passed to his trustees in insolvency, and, therefore, they
have no standing in court. 3 *Bland,* 525; *Post vs. Mar-
shall.* 9 *Gill,* 341, *Higgins vs. Horwitz.* 2nd. That
although the property *not sold* will pass to the trustees in
insolvency, yet when a sale has been made by a judicial
officer, before the insolvency occurred, the rights of the pur-
chaser thus acquired will be respected and sustained by
the court. 6 *Gill,* 226 to 231, *Cunningham vs. Schley.*
7 *Gill,* 269, 287, *Johnson vs. Dorsey.* In the case of *Zeig-
ler vs. King,* 9 *Md. Rep.,* 330; the land had not been sold,
but only advertised for sale, before the application of the
insolvent.

2nd. As to the *third exception,* that the bond required by
the Act of 1826, ch. 192, was not, in this case, to be given
by the mortgagees, but by the attorney and trustee, which
was done. By the 2nd sec. of the Act, the party who is to
act or who is authorized to sell, not the mortgagee, is the
one to give the bonds, and if a trustee, agent or attorney is
appointed by the mortgagee to effect the sale, he is the one
to give the bond, and such has been the universal practice
under the law. 9 *Md. Rep.,* 357, *Wilson vs. Watts.*

3rd. As to the *fourth exception,* 1st. That the sales
were made in conformity to the letter and spirit of the Act
of 1826. 2nd. That when the Act of 1825, ch. 203, sec.
10, and the Act of 1826, ch. 192, were passed, Baltimore
city and county formed parts of the same political divisions
of the State. 3rd. That the 10th sec. of the Act of 1825,
applies only to sales made in conformity with the special

provisions of that Act, and has no application to sales made under the Act of 1826.  7 *Gill*, 286, *Johnson vs. Dorsey. Ibid.*, 305, *Williams vs. Williams.*

4th.  As to the *fifth* and *sixth exceptions*, That the notice given, as admitted in the case, was a compliance with the requirements of the Act of 1826.  The Act does not require twenty days *daily notice* to be given.  Sheriffs do not give *daily* notice of sales.  All that this law requires is, that publication should be made twenty days before the time of sale.  In some instances, these notices do not appear more than once in two weeks.  Daily publication would put the parties to unnecessary expense.  7 *Gill*, 269, 287, *Johnson vs. Dorsey.*

5th.  As to the *eighth exception*, 1st.  That no special terms of sale are prescribed by the Act of 1826, and that a sale on credit was an indulgence by the mortgagees to the mortgagor and his assignees.  2nd.  That the mortgagor was consulted as to the terms of sale, and assented thereto.  2 *H. & G.*, 98, *David vs. Grahame.*

6th.  As to the *seventh, ninth, tenth, eleventh, twelfth* and *thirteenth exceptions*, 1st.  That the descriptions were as perfect as could be made without giving course and distance, which is unnecessary, 2nd.  That the descriptions both in the notice of sale and at the sales as reported, were approved at the time by the mortgagor.  3 *Md. Ch. Dec.*, 226, *Farmers & Planters Bank vs. Martin & Travers.*

7th.  As to the *fourteenth exception*, 1st.  That the terms of sale sufficiently appear by the report and advertisement of the sale.  2nd.  That the sales may be ratified although the purchasers have not complied with the terms of sale, and compliance may be afterwards enforced.  The court below set aside the sales solely upon the ground that the terms of sale were not reported.  But can the purchaser have his title under the sale affected because the report is not full?  He may have complied with all the terms of sale, and yet the sale is to be set aside because of an error or neglect on the part of the trustee.  If the trustee has failed to report he can be made to do so, and if he has not made a full report, he should be

allowed and required to do so; his report could be, and should have been, amended, even at the hearing of the exceptions. If such objections as this are to be sustained, courts of equity will become a nuisance.

8th. That all these exceptions, having been filed more than twenty days after the sale, were too late, and not properly before the court and ought not to have been considered by it. The 5th section of the Act of 1826, ch. 192, is, in this respect, *mandatory* in its terms, and where such is the case nothing will excuse. A widow is given a certain time within which to renounce the will, and it has been decided, that no circumstances or excuse, not even incapacity from any cause, will allow her to renounce after that period. The exceptions of the Great Falls Iron Company, besides being too late, were not served on the appellants, nor set down for hearing, nor was any testimony taken to sustain them; they should have been taken from the file.

9th. As to the motion to dismiss the appeals, 1st. That the Act of 1826, ch. 192, like that of 1833, ch. 181, does not give any new jurisdiction to the court, but only facilitates the remedy in cases where the court had jurisdiction before. 7 *Gill,* 304, 305, *Williams vs. Williams.* 9 *Gill,* 345, *Higgins vs. Horwitz.* 3 *Md. Ch. Dec.,* 226, *Farmers & Planters Bank vs. Martin & Travers.* 2nd. That the jurisdiction of the court becomes complete on the report of the sale, and jurisdiction once obtained, the case is to be governed by such equitable principles as are applicable to sales under decrees. *Act of* 1826, *ch.* 192, *sec* 5. 9 *Md. Rep.,* 357 to 359, *Wilson vs. Watts.* These considerations and authorities show, that an appeal will lie from this order.

10th. That Mr. Scott, the trustee, has an interest in his commissions, costs and legal fees, which, being injuriously affected by this order, gives him a right of appeal. 8 *Md. Rep.,* 299, *Salmon vs. Pierson.* 14 *Md. Rep.,* 23, 24, *Teackle vs. Crosby & Bevan.*

*Jas. Malcolm* and *Thos. S. Alexander,* for the appellees, argued:

White & Elder, *et al., vs.* Malcolm, *et al.*

1st. White & Elder, the mortgagees, have not filed their bond of indemnity, as required by the 2nd sec. of the Act of 1826, ch. 192. The bond filed by the trustee does not meet the requirements of this section. Where a party proceeds under this Act, he must comply strictly with its terms. By it the person authorized to sell is the mortgagee, his heirs or assigns; the party who acts under him is the agent of the mortgagee, and the latter must give the bond, which is to remain as an indemnity to all persons interested.

2nd. The trustee did not give *twenty* days notice of the time, place, manner and terms of sale in two *daily* newspapers printed and published in the city of Baltimore, or in Baltimore county, as required by the 1st sec. of the Act of 1826, ch. 192. Twenty days notice necessarily requires *daily* notice for twenty days. The courts have decided that *weekly* notice for three weeks means notice once a week for three successive weeks, and hence twenty days notice must mean daily notice for twenty days.

3rd. The notice of sale does not sufficiently describe the premises proposed to be sold. Gay's Enlargement, seventy-five acres, more or less, binding on the Philadelphia road, about five miles out, are not sufficient descriptions; they are vague, indefinite and uncertain, and do not constitute a sufficient description. 9 *Md. Rep.*, 230, *Kauffman vs. Walker*.

4th. The sales were made in Baltimore city, beyond and without the limits of Baltimore county, where the lands were situated. The 10th sec. of the Act of 1825, ch. 203, expressly forbids this, and requires the sale to be made in the county. The language of this section is general, applying to *all sales thereafter* to be made, and is still in force and unrepealed by the adoption of the Constitution.

5th. The trustee has not reported the terms on which the sales were made, nor compliance by the purchasers, or any of them, with the terms, in whole or in part. The Act of 1826 requires the report to be made within fifteen days from the time of sale, and the trustee is required to report all the terms of sale, otherwise it cannot be ratified.

6th. The validity of the sales is altogether dependent on

the matters stated in the report, and any defect therein is not to be cured by evidence taken on the exceptions to the sales. If, however, the court should decide otherwise, and look to the notice of sale, it will appear that the trustee proposed to sell in part for cash, and in part on time. Such terms are not warranted by law; the sales must be made for cash.

7th. Mr. Scott has no interest in the controversy save only as trustee, agent or attorney for the mortgagees, and having, therefore, nothing more than a naked power, he has no such interest as will entitle him to appeal, and his appeal should be dismissed. 14 *Md. Rep.*, 23, *Teackle vs. Crosby & Bevan*.

8th. All the appeals should be dismissed on the ground that the order from which they were taken was passed in the exercise of a specially delegated authority, and not in the progress of a cause at law or in equity, and in such case no provision is made for an appeal. Its jurisdiction is only one of supervision, and is only acquired by the filing of the bond. That an appeal will not lie in such a case, no provision in the Act having been made therefor, see 8 *Md. Rep.*, 5, *Lammott vs. Maulsby*; 7 *Gill*, 157, *Carter vs. Dennisin*; 10 *Md. Rep.*, 398, *Robertson vs. American Homestead Association*. The case is wholly distinguishable from a case under the Act of 1833, ch. 181.

9th. It is shown that a *part* only of the property sold is covered by the deed from Howard to the Great Falls Iron Co. In the present state of the proceedings, it would be difficult to ascertain what parts, in particular, are so conveyed. By the application of Howard for the benefit of the insolvent laws and the appointment of his trustees in insolvency, the title to the mortgaged premises became vested in such trustees, and for this reason the sales ought not to be ratified. 9 *Md. Rep.*, 330, *Zeigler vs. King*.

10th. The exceptions were all filed in time. We could not object till the *report* was made, and the twenty days runs from that time. The 5th sec. of the Act of 1826, ch. 192, is not to be construed as excluding all objections beyond twenty days after the day of *sale*, but simply as preventing a

ratification before the expiration of that period.   By the 3rd sec., the trustee is allowed fifteen days to make his report, and in many cases it would be impossible to file the exceptions within twenty days of the sale; they are not, therefore, too late if they are filed before the *ratification* of the sale.

Eccleston, J., delivered the opinion of this court.

These three appeals are all taken from an order of the Circuit court for Baltimore county, setting aside certain sales of real estate, situate in that county, which had been mortgaged by Robert Howard to White & Elder.   The sales were made and reported by T. Parkin Scott, Esq., as "attorney, agent or trustee," for the mortgagees, under the Act of 1826, ch. 192.

Before the sales, the Great Falls Iron Company received a deed from Robert Howard, which it is alleged, by the appellants, conveyed all his equity of redemption, in all the mortgaged premises then held by or remaining in him.

After the sales, under the mortgage, James Malcolm and William H. Brown, were appointed trustees on the application of the said Howard for the benefit of the insolvent laws.

The mortgage to White & Elder, from Howard and his wife, is dated the 6th of October 1857.

The conveyance from Howard and wife to the Great Falls Iron Company bears date the 25th of January 1858.

On the 17th of June 1858, White & Elder executed the power of attorney or authority to Thos. Parkin Scott, authorizing him to sell the mortgaged premises, "according to the provisions of the Act of Assembly, in such case made and provided."   And on the 22nd day of the same month, the said T. P. Scott gave bond to the State, with security, which was duly filed and approved, conditioned to "abide by and fulfil any order or decree which should be made by the Circuit court of Baltimore county, in relation to the sale of the mortgaged premises, or the proceeds thereof."

The said power of attorney, mortgage and bond, were filed in the said Circuit court, on the day last mentioned.

Mr. Scott, as trustee and attorney, made sundry sales of

the mortgaged premises, on the 29th of November 1858, and on the 3rd of December following, reported the same to the said court.

It is admitted that Robert Howard applied for the benefit of the insolvent laws, on the 21st of December 1858, when James Malcolm and William H. Brown were appointed his trustees, and bonded as such.

On the 23rd of the same month these trustees filed two exceptions to the sales, and on the 19th of February 1859, they filed twelve additional exceptions.

The first two are:

1. That said Robert Howard applied for the benefit of the insolvent laws upon the 21st of December 1858, and your petitioners were duly appointed his trustees, and have duly bonded as such, and therefore the sale reported in this case ought not to be ratified.

2. They also allege that said mortgage was given upon a usurious consideration of ten thousand dollars, and ought not therefore to be ratified; and for other reasons that will be urged upon the hearing of these objections to said sale.

The additional exceptions referred to are the following:

3. That the said White and Elder have not filed their bond of indemnity, as required by the section 2, of the Act of 1826, ch. 192.

4. That the sales reported were made in the city of Baltimore, beyond and without the limits of Baltimore county.

5. That the said trustee and attorney did not give twenty days notice of the time, place, manner and terms of sale in two daily newspapers, printed in the city of Baltimore.

6. That the said trustee and attorney did not give twenty days notice of the time, place, manner and terms of sale in two daily newspapers, printed in Baltimore county.

7. That the said attorney and trustee did not in any notice of sale, given by him, sufficiently describe the premises proposed to be sold.

8. That the sales were made on terms not authorized by law.

9. That the sale of lot No. 1, as described in the report of

the said trustee and attorney, is not warranted by any notice of sale given by said trustee and attorney, and that the said description is vague, indefinite and uncertain.

10. That the sale of lot No. 2, as described in said report, is not warranted by any notice of sale given by said trustee and attorney, and that the said description is vague, indefinite and uncertain.

11, 12, 13. These three exceptions are similar to the 10th, and relate to the sales of lots Nos. 3, 4 and 5.

14. That the said trustee and attorney hath not made a report of the terms on which said sales were made, nor of the compliance by the purchasers, or any of them, with said terms of sale, in whole or in part.

On the 21st of May 1859, exceptions to the ratification of the sales were filed by the Great Falls Iron Company, "for the reasons assigned" in the former exceptions.

Mr. Scott, as solicitor for White & Elder, objected to these exceptions:

1st. Because they were not filed in time.

2nd. Because they were not filed until the day for hearing the exceptions of the trustees in insolvency.

3rd. Because the testimony taken on the part of the said trustees was not admissible in evidence, on these exceptions. And therefore the court was asked to direct the clerk to take said exceptions from the file, and that the court would disregard them, because not taken in conformity with the provisions of the Acts of 1826, ch. 192, and 1845, ch. 352.

On the 26th of May 1859, the judge below passed the following order: "The exceptions against the sales made and reported by T. P. Scott, trustee and attorney for the mortgagees, filed by James Malcolm and William H. Brown, trustees for the creditors of Robert Howard, and those filed by the Great Falls Iron Company, and the motion filed by the said White & Elder to take the aforesaid exceptions of the Great Falls Iron Company from the files of the court, standing ready for hearing and being argued by counsel for the parties and submitted, and the proceedings being considered by the court, it is thereupon adjudged and ordered

for the reasons stated in the opinion of the court, filed with this order, that the aforesaid sales, so made and reported as aforesaid, be and the same are hereby set aside and annulled."

The reason assigned in the opinion of the court for setting aside the sales, or why they should not be confirmed is: "Because the terms on which the sales were made, are not stated in the report,"

From the order setting aside the sales these appeals are taken.

The appellees have contended that all said appeals should be dismissed, on the ground that the order on which they have been taken, was passed in the exercise of a specially delegated authority, and not in the progress of a cause at law or in equity, and that in such case no provision is made for an appeal.

But, in *Williams vs. Williams*, 7 *Gill*, 302, the right of appeal was sustained, in a case arising under the Act of 1833, ch. 181, in regard to a sale of mortgaged property; which Act provides a summary mode of effecting such a sale, different from the established general practice in chancery of obtaining decrees for selling property under a mortgage. And, in analogy with the principle decided in that case, a majority of the judges, sitting in the present case, are of the opinion that appeals may be taken from decrees, or decretal orders passed by the court, where sales have been made and reported, under the Act of 1826, ch. 192.

The 5th section of that Act provides for a decision, by the court, in reference to reasons filed, why a sale should not be affirmed, as also in regard to claims for the proceeds of the property; and then the section declares that, "said court shall have the same power in the premises as they now have over sales made by trustees of their own creation, or in the distribution of moneys in the hands of such trustees."

The appellees have said, conceding it to be true, that parties whose rights are affected by such an order as the one before us, may appeal, still as Mr. Scott has no interest in the controversy, save only as trustee, agent or attorney for the mortgagees, he has no right to appeal.

But such a position is at variance with what is said in *Salmon, Trustee of Boon, vs. Pierson*, 8 *Md. Rep.*, 299, and in *Teakle, Trustee, vs. Crosby & Bevan*, 14 *Md. Rep.*, 23 and 24. In both of which cases the principle is most distinctly announced, that where a decision is made which injuriously affects the claim of an insolvent's trustee for commissions, he may appeal. This principle is considered properly applicable to the present case.

The *fourth* exception is an objection to the sales, because they were made in the *city* of Baltimore, and not in Baltimore *county*.

In support of this exception, the Act of 1825, ch. 203, sec. 10, has been relied upon. It provides, "That all mortgage sales, after the first day of May next, shall be made in the county where the mortgaged premises are situated; and provided that where the lands described in any mortgage, are or shall be situated in more than one county; in such case the sale thereof may be made in either of the counties within which such lands are situated."

The 3rd, 4th, 5th, 6th, 7th and 8th sections of the Act, contain provisions exclusively applicable to mortgage sales, which should be made according to the mode established by that law. And although it may be said the 10th section is, not, in express terms, restricted to mortgage sales under that Act, yet, looking to the other sections which have been mentioned, it is believed, by a majority of the court, that the 10th section should be construed as having reference to such sales only. It is, therefore, not applicable to the sales now in dispute.

The 7th, 9th, 10th, 11th, 12th and 13th exceptions present objections based upon the ground that the notice or advertisement of sale given by the trustee and attorney, did not sufficiently describe the premises intended or proposed to be sold.

The notice, as given, was not made part of the report of sales, but was filed, and appears in the record. Upon examination thereof, a majority of the court think there was no ground for setting aside the sales on account of the description of the property given in the notice.

The *third* exception assumes that the 2nd section of the Act of 1826 should be construed as requiring the bond therein provided for, to have been given by the mortgagees, and that the bond of the attorney and trustee was not a compliance with the requirements of the law. In this we do not concur.

The first section authorizes a mortgagee or mortgagees, or his, her or their duly authorized attorney, agent or trustee, to sell the mortgaged property, as fully and freely in every respect, as any trustee acting under a decree of any court, may do.

The second section then provides, "That before any person shall be entitled to act in virtue of the authority vested by the preceding section, he or she shall give bond," &c. Looking to the language of the whole section, it does not seem to require more than one bond. It directs that "*such bond* shall be and remain as an indemnity to and for the security of all persons interested in such mortgaged property, or the proceeds thereof." If, then, where the sale is to be made by an attorney or trustee, the law is to be understood as requiring the bond to be given by the mortgagee, and the law does not provide for one by the trustee, what security will the mortgagee have for his interest in the proceeds of the property?

It can hardly be supposed the Legislature intended the attorney or trustee should be authorized to sell without a bond.

The third section declares " that every person making sale of mortgaged property under the authority of this Act, shall make a report, under oath or affirmation, of the mode of their proceeding, and of all matters done in pursuance of such authority, and of the fairness of the sale," &c. It cannot well be doubted that such report is to be made by the attorney or trustee, when the sale is made by him. If so, why may not the attorney or agent be considered as the person required to give bond, before he "shall be entitled to act in virtue of the authority vested by the preceding section?" When he receives from the mortgagee a power to sell, he surely is a person who is *to act* in making the sale, and, in so doing, he is *to act* in virtue of the provisions of the law on the subject.

The fifth and sixth exceptions object to the sales, because sufficient notice of the time, place, manner and terms of sale was not given.

It appears the sales took place on the 29th of November 1858. The advertisement of the intended sale, it is admitted, was inserted in two daily newspapers, printed and published in Baltimore city, on the 2nd of November 1858, and was continued in said papers twice a week from that day until said day of sale. That it was also inserted in two weekly newspapers printed and published in Baltimore county, commencing on the 6th of November 1858, and continued weekly until the said day of sale.

The law was passed when Baltimore city was part of Baltimore county, the title of the law being, "An Act relating to mortgages in the city and county of Baltimore." And the first section requires at least "twenty days notice in two or more of the daily newspapers published in said city, of the time, place, manner and terms of sale."

The appellees have contended that nothing short of twenty days *daily notice*, is a sufficient compliance with this provision, and, therefore, the notice admitted to have been given in this case did not gratify the requirement of the law.

But this view is not consistent with the principle adopted in *Johnson vs. Dorsey*, 7 *Gill*, 286. There a sale was made under a decree requiring the trustees to give "at least three weeks previous notice, inserted in some newspaper or papers, and such other notice as they might think proper." It was admitted that the trustees advertised the sale once a week for three weeks, and once on the day of sale, in two of the daily newspapers in the city of Baltimore. The court held that to be a legal notice of the sale. It was before the city and county were separated, politically, under the present Constitution, and the land was situate in the county. If the notice there given was a compliance with the decree, the present should be considered sufficient under the Act of 1826. That does not require twenty days *daily notice*, or that the notice should be inserted twenty times in two daily papers.

The Act of 1816, ch. 129, in relation to sales of negroes

and lands, under writs of *fieri facias* or *venditioni exponas*, requires notice by advertisement set up at least twenty days before the day of sale, at the court-house door of the county, and other public places, "and also published for the same period of time, previous to the day of sale, in some newspapers, provided there be any printed in the county where such sale may be made."

This certainly directs publication in the newspapers, where there are any in the county, "at least twenty days before the day of sale," and it is not believed that this law, of so many years standing, has, in any portion of the State, ever been construed as requiring twenty days *daily* advertisements, or twenty insertions in the newspapers. Such a construction would render sales very expensive where there are daily papers; and not only expensive, but subject them to great and needless delay where weekly papers alone are published.

The *eighth* exception raises an objection, which assumes the sales were made on terms not authorized by law. In support of this exception it has been contended that the trustee and attorney had no power to sell on credit, but for cash alone.

The Act of 1826 prescribes no special terms of sales. It does not say whether they are to be for cash or on credit.

The terms, according to the advertisement, were, "one-third cash, and the balance in six months and twelve months, with interest and security." Considering these reasonable, and not prohibited by law, they present no valid objection to the sales.

The *fourteenth* exception objects to the sales, because the trustee and attorney in reporting them, neither stated what the terms were, nor the compliance with them, by the purchasers, or any of them, either in whole or in part. The first branch of this objection is the ground on which the court below set aside the sales. Instead of such an omission being considered sufficient to require the sales to be annulled, in the absence of any proof of fraud, surprise or undue advantage, the rights of purchasers should have induced the court to have authorized, and indeed required the trustee and

attorney to amend his report, by correcting the omission; so far as the facts would warrant.    We have seen already, that by the 5th section of the Act of 1826, when reasons are filed in objection to the affirmance of a sale, the court have the same power in the premises as they have over sales made by trustees of their own creation.

The *first* exception takes the ground that, on the 21st of December 1858, Robert Howard applied for the benefit of the insolvent laws, when James Malcolm and William H. Brown were appointed his trustees, and therefore these sales ought not to be ratified.

By way of reply to this exception the appellants say, that by deed of the 25th of January 1858, before his application for the benefit of the insolvent laws, Robert Howard conveyed all his equity of redemption in the mortgaged premises to the Great Falls Iron Company, so that nothing passed to his trustees in insolvency, and therefore they have no standing in court.

It is undoubtedly true that if the deed from Howard to the Great Falls Iron Company did convey all his equity of redemption in the mortgaged premises, nothing in said property passed to Howard's trustees, and they have no interest which can give them a standing in court.   *Higgins, et al., vs. Horwitz*, 9 *Gill*, 345.

But, under the views we have taken of this case, it is not deemed necessary to examine minutely at this time, whether the deed to the Great Falls Iron Company conveyed Howard's equity of redemption in *all* the mortgaged property then held by or remaining in him.    For although property not sold at the time of an insolvent's application, will pass to the trustee, yet when a sale has been made under a mortgage or decree, before the application of an insolvent, the rights of the purchaser, thus acquired, will be respected and sustained.

In support of this exception the appellees have referred to *Zeigler vs. King*, 9 *Md. Rep.*, 330.    There, however, the sale had not been made, but only notice given of an intended sale, before the insolvent's application.    And there has been

no case in Maryland in which it has ever been held, that a sale of mortgaged property actually made and reported, for ratification, to a court having jurisdiction over the subject, has been set aside, *simply* because the mortgagor, after the sale and report thereof, and before the ratification, became an insolvent petitioner, and had a trustee appointed. Nor do we think the present sales should be annulled for the reason stated in the first exception.

The *second* exception alleges usury. It was not urged in the argument before us, because the counsel thought it would be more appropriately considered with reference to the application of the proceeds of sales.

The appellants have contended that the court should not have considered any of the exceptions, because none of them were filed within twenty days after the sales.

On that subject the 5th section of 1826 provides, that all persons interested in the mortgaged property, "may, at any time within twenty days after the sale thereof, file the reasons, if any exist, why the said sale should not be affirmed."

We do not understand this provision as intended to prevent exceptions after the expiration of the twenty days, although the sale may not have been ratified, but to prohibit the ratification for twenty days, thereby securing to persons interested that length of time to present objections against the sale.

These sales could not have been ratified until the certificates of publication of the report of sales were before the court, and they were not presented until some time in May 1859, long after the expiration of twenty days after the sales.

It has been insisted by the appellants' counsel, (and we think correctly,) that, at the hearing of this case, the court might have allowed the attorney and trustee to have amended his report. And can such be the privilege of one side, and yet the other have no right to object to the sale, as it appears by an amended report, merely because the sale has been made more than twenty days?

There is another hardship resulting from the appellants' doctrine. By the 3rd section of the Act, the report of sale may be made at any time within fifteen days after the sale.

White & Elder, *et al.*, *vs.* Malcolm, *et al.*

This is, virtually, allowing but five days for the filing of exceptions, if they are to be excluded at the end of twenty days after the sale has been made. What exceptions may be proper cannot be well ascertained, in every case, before the report is presented to the court. If it should not be filed until the fifteenth day, and before that an injured party has been required to leave home for a distant place, and should be, necessarily, absent until after the expiration of the twentieth day, the appellants' construction of the law would exclude such a party from any relief, even although the sale may not have been ratified, and although there may be valid objections to the ratification of the sale, known to the party.

According to the long and well settled practice in this State, when a sale is made under a decree in chancery, an order of ratification *nisi* is passed and published, in which it is ordered that the sale shall be ratified, unless cause to the contrary be shown *on or before* a particular day therein named. If, however, after that day, but before final ratification, objections to the sale shall have been filed, they have never been considered as coming in too late to be heard. And if so, why should the 5th section of the Act in question be held to exclude all exceptions after twenty days subsequent to a sale? We do not think any good reason has been, or can be urged, why the like construction should not be given to the Act which has been uniformly applied to the order *nisi* in chancery.

On the 26th of May 1859, the court passed the order annulling the sale. On the 21st of the same month, the exceptions of the Great Falls Iron Company were filed, all others having been previously filed. From the views already expressed, it may be seen that we do not think the exceptions of the company were too late to have been considered by the court, and consequently the appellants were not entitled to have them taken from the file, or dismissed.

The order appealed from will be reversed and the cause remanded for further proceedings, the appellees to pay the costs in this court.

*Order reversed and the cause remanded.*

(Decided May 16th, 1860.)